## IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION NO.** _18-603_ |
| | * | |
| | * | |
| **VS.** | * | **JUDGE** _____ |
| | * | |
| **LANA ELIZABETH THOMAS** | * | |
| **JUNEAU (SSAN:  XXX-XX-5838)** | * | |
| **AND UNOPENED SUCCESSION OF** | * | |
| **DOUGLAS J. JUNEAU (SSAN:** | * | |
| **XXX-XX-5083)** | * | **MAGISTRATE JUDGE_____** |

## COMPLAINT

The United States of America ("Plaintiff") for the Farmers Home Administration

("FmHA") now known as Farm Service Agency (FSA) of the United States Department of

Agriculture, through William D. O'Regan III as Attorney for the United States of America, for its

cause of action alleges:

1.

Jurisdiction in this action is predicated on 28 U.S.C. §1345.

2.

Plaintiff is the holder in due course and owner of those certain promissory notes ("Notes")

made payable to the order of FSA by Defendant(s) described as follows:

| DATE | TYPE | FACE AMOUNT | INTEREST RATE |
|------|------|-------------|---------------|
| 05-22-2002 | EM (43-08) | $13,241.98 | 3.75% |
| 06-21-1999 | Resch | $13,830.00 | 3.75% |
| 05-22-2002 | OL (44-07) | $39,170.82 | 4.75% |
| 06-21-1999 | Resch | $50,170.00 | 4.75% |

Copies of each Note are attached as **Exhibit #1** in globo.

3.

In order to secure their payment of the Notes, Defendant(s) executed in authentic form those acts of mortgage ("Mortgages") covering the property more fully described therein dated and filed for record in the mortgage records of Avoyelles Parish, Louisiana, as follows:

| DATE | REGISTRY NO. | MORTGAGE BOOK/PAGE |
|------|--------------|--------------------|
| 06-21-1999 | 9905107 | 81/655 |
| 05-22-2002 | 02004035 | 107 |

Copies of each Mortgage are attached as **Exhibit #2** in globo.

4.

In order to secure their payment of the Notes, Defendant(s) executed a Real Estate Deed of Trust for Mississippi covering the property more fully described therein dated and filed for record in the records of Attala County, Mississippi, as follows:

| DATE | TRUST DEED BOOK/PAGE |
|------|----------------------|
| 05-24-2002 | 706/79 |

A copy of that Real Estate Deed of Trust for Mississippi is attached as **Exhibit #3**.

5.

Defendant(s) are in default on payment due under the Note(s), the entire balance is now due and payable as a result of acceleration of maturity of the unpaid principal and interest by Plaintiff or by virtue of the terms for payment of the Note(s), and all conditions precedent to the commencement of this action have been satisfied.

2

6.

There have also been certain costs advanced to the defendant(s) to protect the security

property as follows:

| CODE | AMOUNT |
|------|--------|
| 43-93 | $   157.57 |
| 43-94 | $     99.33 |
| 44-95 | $   350.00 |
| 44-96 | $     20.00 |
| 44-97 | $     25.00 |

7.

There is presently due and outstanding under the Notes and advances unpaid principal and

interest accrued to 02-28-2018, in the following amounts:

| LOAN CODE | UNPAIDPRINCIPAL | UNPAID INTEREST | DAILY ACCRUAL |
|-----------|-----------------|-----------------|---------------|
| 44-07 | $ 23,853.73 | $    9,787.71 | $3.1043 |
| 43-08 | 8,678.94 | 2,811.44 | $0.8917 |
| 43-93 | 157.57 | 4.52 | $0.0162 |
| 43-94 | 99.33 | 2.87 | $0.0102 |
| 44-95 | 350.00 | 21.77 | $0.0455 |
| 44-96 | 20.00 | 3.57 | $0.0026 |
| 44-97 | 25.00 | 5.83 | $0.0033 |
| 44-98 | 25.00 | 9.65 | $0.0033 |
| TOTAL | $33,290.57 | $12,883.11 | $4.0771 |

**WHEREFORE, PLAINTIFF PRAYS** for judgment in its favor against Defendant(s), **in
rem** only and not **in personam,** for the amount(s) due and owing Plaintiff as set forth in Paragraph
7 above, plus additional interest to which Plaintiff may be entitled and all costs of this action;

*******

**PLAINTIFF FURTHER PRAYS** that the Mortgage(s)and Deed of Trust be recognized
and maintained upon the property subject to the Mortgage(s) and Deed of Trust, and that said

3

property be sold, **without appraisal** and according to law, at public auction to the highest bidder, and that out of the proceeds of said sale the Plaintiff be paid in preference and priority to all other persons whosoever the amount of its claim in accordance with the terms of the Mortgage(s) and Deed of Trust, and that the amount realized from said sale be credited **pro tanto** upon the amount of the judgment herein; and

**PLAINTIFF FURTHER PRAYS** for all order and decrees necessary in the premises, and for all general and equitable relief to which it may be entitled.

RESPECTFULLY SUBMITTED,

UNITED STATES OF AMERICA

BY:    /s/ William D. O'Regan, III
       William D. O'Regan III
       1107 Main Street
       Laplace, LA   70068
       Bar Roll Number:      10231

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Lana Elizabeth Thomas Juneau (SSAN: XXX-XX-5838) and Unopened Succession of Douglas J. Juneau (SSAN: XXX-XX-5083) |
| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   Attala County, MS <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br> THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> William D. O'Regan, III, 1107 Main Street, LaPlace, LA, 70068 (985) 6542-6476 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question *(U.S. Government Not a Party)*

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product Liability <br> ☐ 320 Assault, Libel & Slander <br> ☐ 330 Federal Employers' Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle Product Liability <br> ☐ 360 Other Personal Injury <br> ☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - Product Liability <br> ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability <br> ☐ 368 Asbestos Personal Injury Product Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal Property Damage <br> ☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 <br> ☐ 690 Other <br><br> **LABOR** <br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Management Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement Income Security Act | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal 28 USC 157 <br><br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated New Drug Application <br> ☐ 840 Trademark <br> **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC 3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation <br> ☒ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ Accommodations <br> ☐ 445 Amer. w/Disabilities - Employment <br> ☐ 446 Amer. w/Disabilities - Other <br> ☐ 448 Education | **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision <br> ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District *(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
USC 28:1345fc

Brief description of cause:
Foreclosure

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ <br> 33,290.57 | CHECK YES only if demanded in complaint: <br> JURY DEMAND:   ☐ Yes   ☒ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|---|

DATE  May 2, 2018

SIGNATURE OF ATTORNEY OF RECORD  *William D. O'Regan*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 06/17)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| | |
|---|---|
| **8. KIND OF LOAN** | |
| Type: _____ EM | ☐ Regular |
| | ☐ Limited Resource |
| Pursuant to: | |
| ☒ Consolidated Farm & Rural Development Act | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | |

| 1. Name |
|---|
| JUNEAU, Douglas J. |

| 2. State | 3. County |
|---|---|
| Louisiana | Avoyelles |

| 4. Case Number | 5. Date |
|---|---|
| 22-05-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 | May 22, 2002 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 43 | 08 |

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| ☐ Initial loan | | ☒ Rescheduling | |
| ☐ Subsequent loan | | ☐ Reamortization | |
| ☐ Consolidated & subsequent loan | | ☐ Credit sale | |
| ☐ Consolidation | | ☐ Deferred payments | |
| ☐ Conservation easement | | ☐ Debt write down | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in_____ P.O. Box 490, Marksville, LA   71351

_____, or at such other place as the Government may later designate in writing, the principal sum of

THIRTEEN THOUSAND TWO HUNDRED FORTY-ONE AND 98/100------------------------------------------------------dollars

($  13,241.98                                    ), plus interest on the unpaid principal balance at the **RATE** of

THREE AND THREE-FOURHTS                          percent (_____ 3.75 %) per annum and

N/A                                               dollars ($_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____ 17 _____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|---|---|---|---|
| $ 1,068.00 on 01-01-03 | ; | $_____ on _____ | ; |
| $_____ on _____ | ; | $_____ on _____ | ; |
| $_____ on _____ | ; | $_____ on _____ | ; |
| $_____ on _____ | ; | $_____ on _____ | ; |
| $_____ on _____ | ; | $_____ on _____ | ; |
| $_____ on _____ | ; | $_____ on _____ | ; |

and $ 1,068.00 _____ thereafter on_____ 01-01- _____ of each_____ year _____ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable _____ 17 _____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.  For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal.  Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower.  Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder.  While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis.  The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder.  The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government.  Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 43-03 | $ 13,830.00 | 3.75 % | 6-21-99 | Douglas J. Juneau | 01-01-19 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing.  These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:**  If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.  The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status.  (Not all prohibited bases apply to all programs.)  Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD).  To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD).  USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant or agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

DOUGLAS J. JUNEAU _____ (Borrower)

LANA E. THOMAS JUNEAU _____ (Co-Borrower)

162 Hwy. 3041
Bunkie, LA  71322

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | **TOTAL** | $ |  |

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

## PROMISSORY NOTE

| KIND OF LOAN |
|---|
| Type: ___EM___    ☐ Regular |
| ☐ Limited Resource |
| Pursuant to: |
| ☒ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| Name |
|---|
| DOUGLAS L. JUNEAU |

| State | County |
|---|---|
| LOUISIANA | AVOYELLES |

| Case No. | Date |
|---|---|
| 220050434885083 | JUNE 21, 1999 |

| Fund Code | Loan No. |
|---|---|
| 43 | 03 |

| ACTION REQUIRING NOTE | |
|---|---|
| ☒ Initial loan | ☐ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in __P.O. Box 490, Marksville LA 71351__

_____, or at such other place as the Government may later designate in writing, the principal sum of

__THIRTEEN THOUSAND EIGHT HUNDRED THIRTY & NO/100__ -------------------- _____ dollars

($__13,830.00__ ---------------------- _____), plus interest on the unpaid principal balance at the **RATE** of

__THREE & THREE FOURTHS__ _____ percent (____3.75____ %) per annum and

_____N/A_____ _____dollars ($_____)
of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in __20__ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$__995.00__ on __1-1-2000__ ; $_____ on _____ ;
$_____ on _____ ; $_____ on _____ ;
$_____ on _____ ; $_____ on _____ ;
$_____ on _____ ; $_____ on _____ ;
$_____ on _____ ; $_____ on _____ ;
$_____ on _____ ; $_____ on _____ ;
and $ __995.00__ thereafter on __1-1__ of each __year__ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable __20__ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

DOUGLAS L. JUNEAU _____ (Borrower)

LANA ELISABETH JUNEAU _____ (Co-Borrower)

162 Hwy. 3041, Bunkie LA 71322

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN |
|---|
| Type:  OL    [X] Regular |
| [ ] Limited Resource |
| Pursuant to: |
| [X] Consolidated Farm & Rural Development Act |
| [ ] Emergency Agricultural Credit Adjustment Act of 1978 |

| 1. Name | | |
|---|---|---|
| JUNEAU, Douglas J. | | |

| 2. State | 3. County |
|---|---|
| Louisiana | Avoyelles |

| 4. Case Number | 5. Date |
|---|---|
| 22-05-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 | May 22, 2002 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 44 | 07 |

| 9. ACTION REQUIRING NOTE | | | |
|---|---|---|---|
| [ ] Initial loan | | [X] Rescheduling |
| [ ] Subsequent loan | | [ ] Reamortization |
| [ ] Consolidated & subsequent loan | | [ ] Credit sale |
| [ ] Consolidation | | [ ] Deferred payments |
| [ ] Conservation easement | | [ ] Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____ P.O. Box 490, Marksville, LA  71351

_____ , or at such other place as the Government may later designate in writing, the principal sum of

THIRTY-NINE THOUSAND ONE HUNDRED SEVENTY AND .82/100----------------------------------------------dollars

($ 39,170.82 ), plus interest on the unpaid principal balance at the **RATE** of

FOUR AND THREE-FOURTHS percent ( 4.75 %) per annum and

N/A dollars ($ )

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in ____ 15 ____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ 3,711.00 on 01-01-03 ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

$ _____ on _____ ; $ _____ on _____ ;

and $ 3,711.00 thereafter on 01-01- of each year until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ____ 15 ____ years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 44-02 | $ 50,170.00 | 5.25 % | 6-21-99 | Douglas J. Juneau | 01-01-06 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)                                                                                                    Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

|  |  |
|---|---|
| DOUGLAS J. JUNEAU | *(Borrower)* |
| ZANA E. THOMAS JUNEAU | (Co-Borrower) |

162 Hwy. 3041

Bunkie, LA  71322

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | **TOTAL** | $ |  |

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

## PROMISSORY NOTE

| KIND OF LOAN |
| --- |
| Type: _____ OL _____  ☒ Regular |
| ☐ Limited Resource |
| Pursuant to: |
| ☒ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| Name | | ACTION REQUIRING NOTE | |
| --- | --- | --- | --- |
| DOUGLAS L. JUNEAU | | ☐ Initial loan | ☐ Rescheduling |
| **State** LOUISIANA | **County** AVOYELLES | ☒ Subsequent loan | ☐ Reamortization |
| **Case No.** 220050434885083 | **Date** JUNE 21, 1999 | ☐ Consolidated & subsequent loan | ☐ Credit sale |
| | | ☐ Consolidation | ☐ Deferred payments |
| **Fund Code** 44 | **Loan No.** 02 | ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in ____ P.O. Box 490, Marksville LA 71351 ____

_____, or at such other place as the Government may later designate in writing, the principal sum of

FIFTY THOUSAND ONE HUNDRED SEVENTY & NO/100 ------------------------- dollars

($ 50,170.00 -------------------- ), plus interest on the unpaid principal balance at the **RATE** of

FIVE & ONE FOURTH _____ percent ( 5.25 %) per annum and

_____ N/A _____ dollars ($ _____ ) of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in ____ 7 ____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | | |
| --- | --- | --- | --- | --- |
| $ 8,749.00 | on 1-1-2000 | ; $ | on | ; |
| $ | on | ; $ | on | ; |
| $ | on | ; $ | on | ; |
| $ | on | ; $ | on | ; |
| $ | on | ; $ | on | ; |
| $ | on | ; $ | on | ; |

and $ 8,749.00 ____ thereafter on 1-1 of each year ____ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ____ 7 ____ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant or agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

DOUGLAS L. JUNEAU                    *(Borrower)*

LANA ELISABETH JUNEAU          (Co-Borrower)

162 Hwy. 3041,  Bunkie  LA  71322

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|---|---|---|---|---|---|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

*handwritten top-right:* STATE OF LOUISIANA, PARISH OF AVOYELLES: I HEREBY CERTIFY that the foregoing is a true copy of the Original _405101_ consisting of _6.99_ pages, on file and record in this office and recorded in Book _81_ of mort page ____ and Book ____ of ____ page ____ of the records of Avoyelles Parish, Louisiana.

Given under my hand and seal of office at Marksville, Louisiana, this ___ day of June, 19_99_

_William ___ _____
Deputy Clerk of Court

**USDA-FmHA**
Form FmHA 427-1 LA
(Rev. 1-91)

Position 5

# REAL ESTATE MORTGAGE FOR LOUISIANA

STATE OF LOUISIANA _____  }
                                        } ss:
PARISH OF   AVOYELLES _____ }

BE IT KNOWN that on the date hereinafter set forth before me   JAMES H. MIXON

a notary public in and for the Parish of ____ AVOYELLES _____, State of Louisiana,

duly commissioned and qualified, came and appeared   DOUGLAS JUNEAU

LANA ELIZABETH THOMAS JUNEAU

of the Parish of ____ AVOYELLES _____, State of Louisiana, whose post office

address is   162 HWY 3041        BUNKIE _____, Louisiana _71322__,

herein called "Borrower", who declared and acknowledged that (t)he(y) is (are) justly and truly indebted unto the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture and its Parish office,

whose mailing address is   P.O. BOX 490, MARKSVILLE, LA 71351 _____, herein called the "Government" in the sum of SIXTY FOUR THOUSAND AND NO/100 _____ Dollars ($ _64,000.00_) the balance of unpaid principal remaining upon loan(s) to Borrower, with interest now due or to become due upon the principal, and upon any unpaid or deferred installments of interest added to the principal, which debts are evidenced by one or more certain promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note" which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 6-21-99 | 50,170.00 | 5.25% | 1-1-2000 |
| 6-21-99 | 13,830.00 | 3.75% | 1-1-2019 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a or any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. §2001:

*handwritten:* Exhibit 2 in globo

FmHA 427-1 LA (Rev. 1-91)

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower declared that Borrower does by these presents specially mortgage, affect, and hypothecate unto and in favor of the Government the following-described property situated in the State of Louisiana, Parish of _____ AVOYELLES _____

A certain tract or parcel of land containing 35.34 acres, together with all buildings and improvements situated thereon, lying in SECTIONS 33 AND 34, TOWNSHIP 1 NORTH, RANGE 3 EAST, Avoyelles Parish, Louisiana, bounded now or formerly, as follows:  North by La Highway and Robert S. Whitton; East by Robert S. Whitton and Eddie Aymond; South by Eddie Aymond and Lester Normand; and on the West by Lester Normand.  LESS AND EXCEPT: The one-half (1/2) acre tract reserved by Mrs. Theresa Normand Tassin, all of which is shown with particularly on the plat of survey of Claude E. McMath, R.L.S. dated June 8, 1968.

This property is (is not) the family home.

together with all rents and other revenues or income therefrom, buildings, improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all appurtenances, servitudes, water, water rights, ways, privileges, prescriptions, and advantages thereto (including the right to mining products, gravel, oil, gas, coal or other minerals) belonging or in anywise appertaining, hereinafter referred to as "the property". The property is so to remain specially mortgaged, affected and hypothecated until the full and final payment of all indebtedness secured hereby and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, and Borrower binds and obligates Borrower not to sell, alienate, or encumber the property to the prejudice of this act.

This act of mortgage further secures an obligation of the mortgagors, or their assignees, in a maximum amount of five thousand dollars ($5,000.00) for reimbursement to mortgagees, or other holders of the note(s), for any sums paid for taxes, assessments, premiums of insurance or any expenses for repairs, care, maintenance or other protection of the security.

AND BORROWER, for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns, WARRANTS that Borrower has good right and lawful authority to mortgage the property described herein, and that the property is free and clear of any lien, charge, or encumbrance thereon or affecting the title thereto except as shown herein, and hereby COVENANTS AND AGREES:

(1)    To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)    To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)    If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)    Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payments of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)    All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)    To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)    To pay when due all taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature whatsoever that affect the property or the Government's rights and interests therein under this mortgage and promptly deliver to the Government without demand receipts or other acceptable evidence of such payments.

(8)    To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)    To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)    To comply with all laws, ordinances, and regulations affecting the property.

(11)    To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)    Except as otherwise provided by the Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)    At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)    The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)    Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(16)    If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower declares that in favor of the Government, and of any and all future holder or holders of the obligations secured hereby, as regards the property herein mortgaged, Borrower waives any and all homestead exemptions to which Borrower is or may be entitled under the constitution and laws of the state of Louisiana.

(20)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation or appraisal, of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition for approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair or property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statute, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statute, age or national origin.

(23)  This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(24)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Alexandria, Louisiana 71301, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(25)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Thus done and passed in _____BUNKIE_____ , Parish of _____AVOYELLES_____ .

State of Louisiana, aforesaid, on this _____21ST_____ day of _____June_____ , 19 99 , in the presence of the undersigned competent witnesses, who signed their names with the said appears and me, notary, after due reading of the whole.

Witnesses:

_____        _____
Melissa Ricote                          DOUGLAS JUNEAU                (Borrower)

_____        _____
Denise Bordes                           LANA ELIZABETH THOMAS JUNEAU  (Co-Borrower)

                                        _____
*U.S. Government Printing Office: 1991 — 555-720                          Notary Public.

**USDA**
Form RD 1927-1 LA
(Rev. 11-99)

*Position 5*

STATE OF LOUISIANA:
PARISH OF AVOYELLES: I HEREBY CERTIFY that the foregoing
is a true copy of the Original 02-004035 consisting of
4 pages, on file and record in this office on
5/22/02 and recorded in Book 107 of page 23 at page
___ in book ___ of ___ page ___ of the records of Avoyelles
Parish, Louisiana.
Given under my hand and seal of office at Marksville,
Louisiana, the ___ day of ___ 20 02
_Deputy Clerk of Court_

# REAL ESTATE MORTGAGE FOR LOUISIANA

STATE OF LOUISIANA _____

PARISH OF _____ AVOYELLES _____ } ss:

BE IT KNOWN that on the date hereinafter set forth before me _____

JACKIE D. MOSES

, a notary public in and for the Parish of _____ AVOYELLES _____ , State of Louisiana,

duly commissioned and qualified, came and appeared _____ DOUGLAS J. JUNEAU _____

AND LANA ELIZABETH THOMAS JUNEAU, (husband and wife)

of the Parish of _____ AVOYELLES _____ , State of Louisiana, whose post office

address is _____ 162 HWY 3041, BUNIE _____ , Louisiana _____ 71322 .
herein called "Borrower", who declares and acknowledges indebtedness unto the United States of America, acting through
the United States Department of Agriculture and its Parish office,

whose mailing address is _____ P.O. BOX 490, MARKSVILLE, LA 71351 _____ , herein called the "Gov-
ernment" in the sum of _____ ONE HUNDRED TWO THOUSAND FIVE HUNDRED TWENTY-TWO AND .80/100 _____ Dollars ($ 102,522.80 )
the balance of unpaid principal remaining upon loan(s) to Borrower, with interest now due or to become due upon the
principal, and upon any unpaid or deferred installments of interest added to the principal, which debts are evidenced by
one or more certain promissory note (s) or assumption agreement (s) or any shared appreciation or recapture agreement,
herein called "note" which has been executed by Borrower, is payable to the order of the Government, authorizes accelera-
tion of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| MAY 22, 2002 | $ 7,660.00 | 3.75% | MAY 22, 2003 |
| MAY 22, 2002 | $ 42,450.00 | 4.75% | MAY 22, 2003 |
| MAY 22, 2002 | $ 13,241.98 | 3.75% | MAY 22, 2019 |
| MAY 22, 2002 | $ 39,170.82 | 4.75% | MAY 22, 2017 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this
instrument may be increased as provided in the Government regulations or the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure
payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949,
or any other statutes administered by the Government;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the
Government, or in the event the Government should assign this instrument, this instrument shall secure payment of
the note; but

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture
Agreement entered into pursuant to U.S.C. § 2001:

NOW, THEREFORE,  in consideration of the loan(s) and (a') at all times when the note is held by the Government, or in the event the Government should assign this instrument, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower declared that Borrower does by these presents specially mortgage, affect, and hypothecate unto and in favor of the Government the following-described property situated in the State of

Louisiana, Parish of _____ AVOYELLES _____

A certain tract or parcel of land containing 35.34 acres, together with all buildings and improvements situated thereon, lying in SECTIONS 33 AND 34, TOWNSHIP 1 NORTH, RANGE 3 EAST, Avoyelles Parish, Louisiana, bounded now or formerly, as follows:  North by La Highway and Robert S. Whitton; East by Robert S. Whitton and Eddie Aymond; South by Eddie Aymond and Lester Normand; and on the West by Lester Normand.  LESS AND EXCEPT: The one-half (1/2) acre tract reserved by Mrs. Theresa Normand Tassin, all of which is shown with particularly on the plat of survey of Claude E. McMath, R.L.S. dated June 8, 1968.

This property is (is not) the family home.

together with all rents and other revenues or income therefrom, buildings, improvements, all appurtenances, servitudes, water, water rights, ways, privileges, prescriptions, and advantages thereto including the right to mining products, gravel, oil, gas, coal or other minerals) belonging or in anywise appertaining, hereinafter referred to as "the property". The property is so to remain specially mortgaged, affected and hypothecated until the full and final payment of all indebtedness secured hereby and the performance and discharge of each and every condition, agreement and obligation, contingent or otherwise, contained herein or secured hereby, and Borrower binds and obligates Borrower not to sell, alienate, or encumber the property to the prejudice of this act.

This act of mortgage further secures an obligation of the mortgagors, or their assignees, in a maximum amount of five thousand dollars ($5,000.00) for reimbursement to mortgagees, or other holders of the note(s), for any sums paid for taxes, assessments, premiums of insurance or any expenses for repairs, care, maintenance or other protection of the security.

AND BORROWER, for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns, WARRANTS that Borrower has good right and lawful authority to mortgage the property described herein, and that the property is free and clear of any lien, charge, or encumbrance thereon or affecting the title thereto except as shown herein, and hereby COVENANTS AND AGREES:

(1) To pay promptly when due any indebtedness to the Government hereby secured.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) The Government may at any time pay any other amounts including advances for payments of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, assessments, levies, liabilities, obligations, and encumbrances of every nature whatsoever that affect the property or the Government's rights and interests therein under this mortgage and promptly deliver to the Government without demand receipts or other acceptable evidence of such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner, comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall .have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government-whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(16) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for

loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance  of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19)  Borrower declares that in favor of the Government, and of any and all future holder or holders of the obligations secured hereby, as regards the property herein mortgaged, Borrower waives any and all homestead exemptions to which Borrower is or may be entitled under the constitution and laws of the state of Louisiana.

(20)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation or appraisal, of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition for approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

(21)  Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair or property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, handicap, familial statute, age or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, handicap, familial statute, age or national origin.

(23)  This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to _____ and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the post office address shown above).

(25)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

Thus done and passed in ——————— MARKSVILLE ———————, Parish of ——————— AVOYELLES ———————,

State of Louisiana, aforesaid, on this ——————— 22ND ———————, day of ——————— MAY ———, 2002 ———,

in the presence of the undersigned competent witnesses, who signed their names with the said appeares and me, notary, after due reading of the whole.

Witnesses:

_____ _____ (Borrower)

_____ _____ (Co-Borrower)

_____ _____ Notary Public.

RD 1927-1  LA (Rev. 11-99) Page 4 of 4

USDA
Form FmHA 1927-1 MS
(Rev. 4-96)

**079**

## REAL ESTATE DEED OF TRUST FOR MISSISSIPPI

THIS DEED OF TRUST is made and entered into by and between ___Douglas J. Juneau___

_____ and

_____Lana Elizabeth Thomas Juneau_____

residing in _____Attala_____ County, Mississippi, whose post office address

is ____104 Bell St.  Kosciusko_____ , Mississippi ___39090___ ,

grantor(s), herein called "Borrower," and ___Chris J. Normand, Farm Loan Manager___

P.O. Box 490

Marksville, LA  71351

as trustee, herein called "Trustee," and the United States of America, acting through the United States Department of Agriculture, beneficiary, herein called the "Government," and:

WHEREAS, Borrower is indebted to the Government as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| May 22, 2002 | $  7,660.00 | 3.75% | May 22, 2003 |
| May 22, 2002 | $ 42,450.00 | 4.75% | May 22, 2003 |
| May 22, 2002 | $ 13,241.98 | 3.75% | May 22, 2019 |
| May 22, 2002 | $ 39,170.82 | 4.75% | May 22, 2017 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in the Government regulations and the note.)

And the note evidences a loan to Borrower, the Government, at any time, may assign the note pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statutes administered by the Government.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument, this instrument shall secure payment of the note.

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation Recapture Agreement entered into pursuant to 7 U.S.C. §2001.

NOW, THEREFORE, in consideration of the loans, Borrower does hereby grant, bargain, sell, convey, and assign unto trustee with general warranty the following-described property situated in the State of Mississippi County or Counties of

_____Attala_____ :

"SEE ATTACHED"

_Exhibit 3_

080

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues and profits thereof and revenues and income therefrom, all improvements, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

IN TRUST, NEVERTHELESS, (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns COVENANTS AND AGREES as follows:

(1)     To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower.

(2)     To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)     If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)     The Government may at any time pay any other amounts including advances for payment of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate .

(5)     All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)     To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)·     To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)     To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9)     To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)     To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions thereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as beneficiary hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower, will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) The power to appoint a substitute trustee is hereby granted to the Government and its assigns, to be exercised at any time hereafter, without notice and without specifying any reason therefor, by filing for record in the office where this instrument is recorded an instrument of appointment, whereupon the substitute trustee shall succeed to all the estates, rights, powers, and trusts herein granted to or vested in Trustee, and the former trustee or substitute trustee shall be divested thereof; and notice of the exercise of this power and any requirement of, or right to require, a bond from any trustee hereunder, are hereby waived.

(17) Default hereunder shall constitute default under any other real estate, or under any personal property or other security instrument held by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(18) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, and (d) foreclose this instrument as provided herein or in any other manner provided by law.

(19) Upon default aforesaid, at the request of the Government, Trustee may foreclose this instrument by advertisement and sale of the property as provided by law, for cash or secured credit at the option of the Government; such sale may be adjourned from time to time without other notice than oral proclamation at the time and place appointed for such sale and correction made on the posted notices; and at such sale the Government and its agents may bid and purchase as a stranger; Trustee may conduct such sale without being personally present, through a delegate authorized by Trustee for such purpose orally or in writing, and Trustee's execution of a conveyance of the property or any part thereof to any purchaser at foreclosure sale shall be conclusive evidence that the sale was conducted by Trustee personally or through a delegate duly authorized in accordance herewith. If the property is situated in two or more counties, the sale may be held in any one of such counties selected by the Government in its sole discretion. The provisions of Art. 4, §111 of the Constitution of Mississippi and §89-1-55, Miss. Code Ann. are waived and the Trustee herein may sell the land in parcel or as a whole, as the Trustee may deem best.

(20) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid (e) at the Government's option, any other indebtedness of Borrower owing to the Government, and (f) any balance to Borrower. In case the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(21) All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

(22)    Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, or (d) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent.

(23)    If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called " the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status or age.

(24)    Borrower further agrees that the loans secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, 7 C.F.R. part 1940, subpart G.

(25)    This instrument shall be subject to the present Government regulations and to its future regulations not inconsistent with the express provisions hereof.

(26)    Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to _____ _____ , and in the case of Borrower to the address shown in the Government's Finance Office records (which normally will be the same as the post office shown above).

(27)    If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

WITNESS the signatures of Borrower this _24_ day of _MAY_ , _2002_

} ss:

STATE OF MISSISSIPPI

COUNTY OF _Attala_

**ACKNOWLEDGMENT**

Personally appeared before me, the undersigned, a _Chancey Clerk_ in and for said County and State, the within-named _Douglas J. Jureau_ and _Lana Elizabeth Thenos Jureau_ , who acknowledged that they signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and official seal this _24th_ day of _May_ , 19 _2002_

(SEAL)

_Gerry Taylor_
_(Signature)_

_Chancery Clerk_
_(Title)_

My commission expires _My Commission Expires Jan. 5, 2004_

*U.S. GOVERNMENT PRINTING OFFICE:1996-755-043/60179

Property of Douglas J. & Lana E. Juneau
104 Bell St.
Kosciusko, MS 39090

**EXHIBIT "A"**

083

A lot or parcel of land in the City of Kosciusko, Mississippi, more particularly described as follows, to-wit:

Commencing at the intersection of the Southern boundary line of East Adams Street with the Eastern boundary line of Bell Street, according to Caldwell's Official Map of the City of Kosciusko, Mississippi, and dated 1938. Run thence South along the Eastern boundary line of Bell Street a distance of 356.5 feet to a point marked by an iron stake. The point marked by an iron stake described above marks the beginning point of this description. From this beginning point run thence East a distance of 385 feet to a point on wire fence line, thence South along wire fence line a distance of 91.5 feet to a point at wire fence corner, thence West along or near hedgerow and wire fence line a distance of 386 feet to a point marked by an iron stake on the Eastern boundary line of Bell Street; thence run North along said boundary line of said street a distance of 91.5 feet to the point of beginning. Located as a part of Lot No. 320 according to Caldwell's Official Map of the City of Kosciusko, Mississippi, dated 1938, and in Section 21, Township 14 North, Range 7 East, Attala County, Mississippi.

ALSO: Commencing at the point of intersection of the Southern right-of-way boundary line of East Adams Street with the Eastern boundary line of Bell Street, run thence South along the Eastern right-of-way boundary line of Bell Street a distance of 265 feet to a point, which point is the Northwest corner of the lot hereby conveyed and the Southwest corner of the property owned by the Catholic Church and which point is the point of beginning of the description of the property hereby conveyed. From this point of beginning, run in an easterly direction along a hedgerow and fence row a distance of 387 feet to a fence corner; run thence in a southerly direction along a wire fence a distance of 91.5 feet to a point which is the Northeast corner of the Walter V. Davis lot; from said point run in a westerly direction along the Northern boundary line of a lot presently owned by Walter V. Davis and wife, a distance of 387 feet, more or less, to the Eastern right-of-way boundary line of Bell Street; thence run in a northerly direction along the Eastern boundary line of Bell Street a distance of 91.5 feet to the point of beginning and close. All of said land lying and situated in Section 21, Township 14 North, Range 7 East, and being a part of Lot No. 320 of the City of Kosciusko, according to Mercer's Map and Survey of 1900.

The above property is the same property as conveyed to Matha Rene' Crowe by Mary D. Irby by that certain Warranty Deed dated December 30, 1993, and recorded in Attala County, Mississippi, Land Deed Book 513, at page 81 thereof.

STATE OF MISSISSIPPI  }
ATTALA COUNTY          }  1470          SS

I, Gerry Taylor, Clerk of the Chancery Court of said County, certify that the within and foregoing instrument of writing was filed for record in my office on the 24th day of May, 2002, at 1:30 o'clock P. M. and that the same has been duly recorded by me in Trust Deed Book No. 106, Page 79.

Witness my hand and official seal of office this 24th day of May, 2002.

Gerry Taylor, Chancery Clerk

by _____ D.C.